GARY M. RESTAINO
United States Attorney
District of Arizona
FRANK T. GALATI
Assistant United States Attorney
Arizona State Bar No. 003404
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Frank.Galati@usdoj.gov
Attorneys for Plaintiff

FILED \_\_\_ LODGED
RECEIVED \_\_\_ COPY

MAR 1 2 2024

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

REDACTED FOR
PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>  Plaintiff,<br><br>vs.<br><br>Joshua Ben Anderson,<br><br>  Defendant. | No. CR-24-8027-PHX-SPL (DMF)<br><br>**I N D I C T M E N T**<br><br>VIO:  18 U.S.C. § 1512 (b)(3)<br>       (Engaging in Misleading Conduct)<br>       Count 1<br><br>       18 U.S.C. § 1512 (c)(1)<br>       (Corrupt Altering and Concealment)<br>       Count 2 |

**THE GRAND JURY CHARGES:**

At all times relevant to this Indictment:

**BACKGROUND**

1.  JOSHUA BEN ANDERSON was a certified and enrolled member of the White Mountain Apache Tribe. He was also a very experienced sworn officer of the White Mountain Apache Tribe Police Department ("WMATPD") in Whiteriver, Arizona, having been an officer of the WMATPD since July 29, 2002, and having served as a Sergeant or Lieutenant for about 10 years.

2.  On November 23, 2023, JOSHUA BEN ANDERSON (or "Officer ANDERSON") was on duty and working as a WMATPD officer. He was working in his patrol unit,

a Ford F-150 pickup truck.

3. At approximately 3:00 AM, November 23, 2023, WMATPD dispatched Officer ANDERSON to a gun incident, which caused him to travel north on State Route 73 ("SR-73").

4. At approximately 3:21 AM, Officer ANDERSON cleared the scene of the gun incident, meaning he left the scene, and headed south bound on SR-73.

5. While driving southbound on SR-73, Officer ANDERSON felt what he later described as "a bump," but continued southbound on SR-73 without stopping.

6. At approximately 3:29 AM, WMATPD received its first call regarding a body being observed on SR-73.

7. At approximately 3:31 AM, Officer ANDERSON was dispatched to conduct a welfare check of the person who had been observed on SR-73.

8. Officer ANDERSON recognized that he was dispatched to the general area where only minutes before he had felt a bump while driving.

9. At approximately 3:45 AM, Officer ANDERSON arrived at the scene, milepost 355.5 on SR-73. He was informed that the person was deceased. Despite recognizing that the scene was in the area where he felt the bump, he said nothing.

10. Investigation of potential felony offenses that involve death or serious injury that occur on tribal lands of the White Mountain Apache Tribe is within the jurisdiction of federal law enforcement. WMATPD routinely refers such investigations to the Federal Bureau of Investigation or Bureau of Indian Affairs.

11. Shortly after arriving at the scene, Officer ANDERSON spoke with a witness who said that he saw a red Malibu with front end damage and another who saw a black SUV in the area. ANDERSON also spoke to paramedics at the scene but said nothing about his likely involvement in the incident.

12. At approximately 4:14 AM, Officer ANDERSON briefed a WMATPD Sergeant and a Detective and told them that a witness had seen a red Malibu with front end

damage. He did not tell them that he suspected or knew that he was driving the vehicle that hit the deceased person. Rather, another patrol officer was directed to look for the red Malibu.

13. At approximately 4:37 AM, a WMATPD Highway Safety Officer ("HSO") arrived at the scene to investigate. The HSO is WMATPD's traffic accident investigation expert. Officer ANDERSON briefed the HSO and told him that a witness reported seeing a red Malibu with front end damage going northbound and another witness saw a black SUV going southbound. Officer ANDERSON did not tell the HSO that he suspected or knew that it was he who struck the deceased victim.

14. The HSO walked the scene with Officer ANDERSON. They located a black piece of plastic that had blood and human flesh on it. The HSO told Officer ANDERSON that the vehicle that had fled the scene was a pickup truck and that the black plastic piece came from the suspect vehicle. Officer ANDERSON said nothing about his likely involvement.

15. The HSO located a part number on the piece of black plastic and determined that it came from a 2015 or newer Ford F-150 pickup truck. The part came from the front lower bumper damper. He then notified a WMATPD Sergeant and Show Low and Pinetop police departments that they were looking for a 2015 or newer Ford F-150 pickup truck.

16. The HSO asked Officer ANDERSON if he was taking the black plastic bumper piece as evidence. Officer ANDERSON then took possession of the black plastic bumper piece to transport it to WMATPD as evidence in the investigation.

17. Officer ANDERSON filled out the autopsy report and wrote on the body bag but said nothing about his likely involvement.

18. Officer ANDERSON, the Chief of WMATPD and two Sergeants went to the home of the victim's parents and notified them of the loss of their daughter. Officer ANDERSON said nothing about his likely involvement.

19. As Officer ANDERSON was leaving the scene to notify the victim's family, the HSO noticed that Officer ANDERSON's Ford F-150 patrol vehicle had damage to the front. The lower circular bar running across the lower part of the push bar was broken in two, and a piece behind the push bar was missing.

20. Officer ANDERSON later stated that when he saw the HSO looking at ANDERSON'S patrol vehicle, he knew that the bumper part that was found at the scene was probably from his vehicle, but he said nothing.

21. At approximately 8:20 AM, Officer ANDERSON called a patrol officer who had been searching for the red Malibu. ANDERSON asked if the patrol officer had located the red Malibu. When he was told no, ANDERSON directed the patrol officer to keep looking.

22. When Officer ANDERSON'S shift ended, he drove to his residence, and he took the black plastic bumper piece with him.

23. Officer ANDERSON later stated that after arriving at his residence, he inspected the bumper of his patrol vehicle and removed and concealed the broken parts from the front bumper area of his patrol vehicle. And he said nothing to the WMATPD officers who were investigating.

24. On November 24, 2023, the HSO learned that a security video taken at the Hon-dah Casino near the time of the traffic fatality, shows the victim walking southbound on SR-73, and shows no other vehicles heading southbound on SR-73 until Officer ANDERSON'S patrol vehicle does so, and shows no other vehicle doing so until the ambulance that was dispatched to the scene does so, heading southbound on SR-73. This information, considered together with the condition of Officer ANDERSON'S patrol vehicle bumper that he had seen earlier, caused the HSO to believe that Officer ANDERSON had struck the victim. The HSO informed a Sergeant of his concerns.

25. A Lieutenant and a Sergeant, and later the HSO, went to Officer ANDERSON'S

residence to look at his patrol vehicle. After they observed Officer ANDERSON'S patrol vehicle, OFFICER ANDERSON was asked about the front-end damage to his patrol vehicle. Officer ANDERSON said that the front-end damage to his patrol vehicle was old and occurred long ago. He knew this was not true.

26. The Lieutenant looked under Officer ANDERSON'S patrol vehicle and observed what he believed to be blood, black hair, and brain matter. Officer ANDERSON was asked if he ran over anything. He replied that he had not, but he had run over skunks and other things in the past. He knew this was not true.

27. The black plastic bumper piece that was found at the scene and was collected as evidence was found by WMATPD officers in the bed of Officer ANDERSON'S patrol vehicle at his residence.

28. Upon being detained and taken to WMATPD headquarters, Officer ANDERSON asked for a pen and paper and hand wrote a brief resignation letter.

29. On November 25, 2023, Officer ANDERSON told the FBI that the portion of the front bumper that he had removed from his patrol vehicle was in his green 1973 Ford 100 truck that was parked at his residence. Officer ANDERSON gave verbal and written consent to the FBI to enter the 1973 Ford truck and retrieve the bumper piece, which was done.

## COUNT 1

### Engaging in Misleading Conduct

30. The factual allegations in paragraphs 1 through 29 of the Indictment are incorporated by reference and are re-alleged as though fully set forth herein.

31. On or about November 23 and 24, 2023, in the District of Arizona, JOSHUA ANDERSON, a police officer of the White Mountain Apache Tribe Police Department, knowingly engaged in misleading conduct toward other persons with the intent to hinder or delay the communication to a law enforcement officer of the United States of information concerning the possible commission of a federal

offense.

32. More specifically, Officer ANDERSON (a) knowingly engaged in misleading conduct is as listed in paragraphs 9-29 of this indictment. (b) toward the officers of the WMATPD who were investigating the fatality described in the preceding paragraphs, (c) with the intent to hinder or delay the communication to agents of the Federal Bureau of Investigation or the Bureau of Indian Affairs, (d) of information concerning the possible commission of the federal offense, including but not limited to Involuntary Manslaughter, Title 18, United States Code, Section 1112(a).

All in violation of Title 18 United States Code, Section 1512 (b)(3).

## COUNT 2

### Corrupt Altering and Concealment

33. The factual allegations in paragraphs 1 through 29 of the Indictment are incorporated by reference and are re-alleged as though fully set forth herein.

34. On or about November 23 and 24, 2023, in the District of Arizona, JOSHUA ANDERSON, a police officer of the White Mountain Apache Tribe Police Department, corruptly altered and concealed an object with the intent to impair the object's integrity and availability for use in an official proceeding.

35. More specifically, Officer ANDERSON, knowing that the black plastic bumper piece that was found at the scene with human flesh and blood on it was from a 2015 or newer Ford F-150 pickup truck, and knowing that it likely came from his patrol vehicle and matched the bumper parts that remained on this patrol vehicle, removed the damaged bumper parts from his patrol vehicle and concealed the removed

//
//
//
//
//

bumper parts, with the intent to impair the bumper parts' integrity and availability for use in a federal grand jury presentation.

All in violation of Title 18 United States Code, Section 1512 (c)(1).

A TRUE BILL

s/
FOREPERSON OF THE GRAND JURY
Date:  12th day of March, 2024.

GARY M. RESTAINO
United States Attorney
District of Arizona

s/
FRANK T. GALATI
Assistant U.S. Attorney